Ruben ARROYO, Plaintiff,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Defendant.

Civ. No. 82–1035CC.

United States District Court,
D. Puerto Rico.

Feb. 23, 1983.

Samuel Pagán-Pagán, Bayamón, P.R., for plaintiff.

Eduardo E. Toro-Font, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

### ORDER

CEREZO, District Judge.

■ This action seeks review of the final decision of the Secretary of Health and Human Services (the Secretary) denying disability benefits claimed by plaintiff due to a mental disorder and chronic alcoholism. It was determined that plaintiff's mental impairment was not "severe" as required by the regulations, 20 CFR Sec. 416.920(c) and thus he was found not disabled within the meaning of the Social Security Act, 42 U.S.C. Sec. 301, *et seq* (the Act). In so doing, the Secretary, following the regulations' sequential guidelines (the Grid), 20 CFR Sec. 404.1520, *et seq.*, see: *Pérez v. Schweiker,* 653 F.2d 997, 999–1000 (5th Cir. Unit A 1981), stopped at point (c) (severity of the impairment) and did not continue the sequence which would have required consideration of vocational factors; i.e.: whether the impairment is equal to one found in Appendix 1, and, if not, whether the impairment would prevent plaintiff from engaging in past relevant work or other substantial gainful activity in the national economy. The court's reviewing task is to examine whether the Secretary's finding of non-severity was made in accordance with the regulations and the Act and whether the finding is supported by substantial evidence.

Although the Act does not define "severe impairment,"[1] the regulations indicate that a severe impairment is one that "significantly limit[s] ... physical or mental abilities to do basic work activities." 20 CFR Sec. 416.921(a). See also: 20 CFR Sec. 404.-1521(a), Sec. 404.1520(c) and Sec. 416.920(c). Basic work activities are the abilities and aptitude necessary to do most jobs. 20 CFR Sec. 416.921(b). The regulations give the following examples of what are these work activities: physical functions such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing and speaking; mental and emotional related functions such as understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, coworkers, usual work situations and dealing with changes in a routine work setting. 20 CFR Sec. 416.-921(b). The Secretary's explanation to the Medical Vocational Guidelines adopted in 1979 mentions that a severe impairment is one that "significantly limit[s] the individual's physical or mental capacity to perform basic work-related functions," as cited in McCormick, H., *Social Security Claims and Procedures,* Sec. 679 (2nd Ed.) p. 126 (1980 Supp.).

The record before the Court reveals that the psychiatrists who examined plaintiff, including the one designated by the Secretary, found that his depression affected his relationships with immediate relatives and his social interaction with other people.[2] At

1. The Act only defines the general term disability which for claims like the one before us is said to be "the inability to engage in any substantial gainful activity by reason of any medically determinable impairment...." 42 U.S.C. Secs. 416(i)(1), 423(d)(1)(A).

2. Dr. William Rocafort, Veteran's Administration physician states in Exhibit 14: "Patient states that at times he feels like killing his wife and feels aggressive toward his children...;" Dr. William Galíndez plaintiff's treating physician in Exhibit 15 states: "patient is depressed, detached, withdrawn, tolerating poorly the interview ... afraid of people, preferring to be alone ... intolerance to noise and people and easy irritability ... patient prefers to be alone locked in his room and he seldom participates in conversations ... does not interact with strangers...;" Dr. Carmen Rivera Cuesta, the

the hearing, plaintiff indicated that he had problems in his working relationship with his supervisor.[3] The Secretary in support of its finding of non-severity indicated: "Claimant was observed to get to and from the hearing room without any difficulty. He tolerated the proceedings very well and was observed alert, logical coherent, lucid and in contact with the surroundings." It was emphasized that plaintiff had a good memory, that his driver's license had been recently renewed and he had a cooperative attitude, as perceived by an officer of the Secretary who interviewed him to prepare a Reconsideration Disability Report, (Exhibit 10).[4] The Secretary reached the following conclusions:

> The record strongly suggests the presence of a mild-to-moderate mental condition, amenable to medical treatment, which does not preclude the claimant from functioning and which has not resulted in marked restriction of his daily activities or in significant constriction of interests or deterioration in his personal habits, or a serious impairment in his ability to relate to others. By way of conclusion, the claimant did not exhibit any observable cue or signs that can be associated with the presence of severe mental disorder. Administrative Law Judge's decision at page 5, page 13 of the transcript.

If the Secretary's finding of non-disability had been made at a subsequent stage in the Grid sequence and if it had been connected with plaintiff's past rele-

vant work and other vocational factors of the regulations, the finding and the references to the record in support thereof would have been adequate. However, it is important to note the Grid stage at which certain determinations are made and to follow the step by step procedure whenever possible. In this proceeding the finding that the impairment was not "severe" should have been guided by the criteria for "severity" established in the regulations for that stage and not interspersed with factors and requirements from subsequent stages having to do with the vocational considerations and the Appendix' listing of impairments. In fact, the language used by the Secretary reveals that plaintiff's impairment was not considered severe because it did not meet the requirements for mental disorders as listed in Appendix 1, 12:00, 12:04(B). It is possible that such findings may be relevant for other stages of the sequential determination and for different purposes. If the sequential evaluation is followed and plaintiff's severe mental impairment or its equivalent is not found in Appendix 1, his functional capacity may demonstrate that he can still engage in past relevant work and thus found not disabled for *this* reason. See: *Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982). However, to arrive at this conclusion reference must be made to the requirements of plaintiff's past relevant work and his residual functional capacity must be examined by these standards. The present record is devoid of any such inquiry nor was

psychiatrist assigned by the Secretary indicated in Exhibit 16 (the patient expressed that) "He had problems in relating to coworkers, became argumentative. Likewise, he became argumentative at home...." Dr. Cuesta concluded that plaintiff's judgment was poor, his ability to relate to other people was seriously affected (moderately severe) and that he could not perform complex task or work requiring frequent contact with others.

3. Transcript at page 6 (The Administrative Law Judge questioning plaintiff):
   Q. Your nerves in what way? What's wrong with you?
   A. I would fight and....
   Q. Pardon?
   A. I fought and didn't ... the company....
   Q. You would fight?

A. Yes....
Q. But who did you fight with?
A. With the boss there.
Q. With the kids at home?
A. No, at Water Resources.
Q. Fist fights?
A. No.
Q. How did you fight?
A. Unintelligible.
Q. Oh talking, with your voice. Arguing, you didn't get into fist fights with them.

4. The interviewer indicates: "The claimant (unintelligible) alone, was dressed in clean clothes and well shaved (unintelligible) alone driving his own auto. Was very cooperative." The interviewer also indicated that plaintiff was very forgetful and answered very slowly.

the finding made at that stage of the proceedings. The decision in this case was made at the stage where the factors to be examined in order to determine if the impairment is of sufficient severity are whether the impairment significantly limits basic work functions. The record reveals more than enough medical evidence to support a finding that plaintiff's mental disorder would significantly limit his "basic work activities." On the other hand, the Secretary's conclusion that plaintiff's impairment is mild-to-moderate disregards these clinical findings, makes no reference to the criteria for severity found in the regulations and focuses only on some abilities which may be considered work-related functions, such as memory and understanding, while ignoring others that are also work-related activities. The Secretary's finding of non-severity must be made in accordance with the criteria of the regulations for this stage of the sequential evaluation.

 After considering the entire record we hold that there is not substantial evidence to support a finding that plaintiff's mental impairment did not significantly limit some of his basic work-related activities. We decline to read into the severity requirement of the regulations the criteria and guidelines taken from other stages of the sequential evaluation or to require that plaintiff demonstrate significant limitation in all of the examples for basic work activities, for to do so would ignore the remedial purposes of the Act and its liberal interpretation. See: *Bastien v. Califano,* 572 F.2d 908 (2nd Cir.1978). Furthermore, placing such unreasonable requirements at the "severity" stage would permit that the mandate of the Act, as well as the regulations' sequential evaluation, be ignored by providing a shortcut to finding nondisability based on a criteria of "basic work activities" that may produce results foreign to the "substantial gainful activity" general precept of the Act. See: *Cunningham v. Harris,* 658 F.2d 239, 242–43 (4th Cir.1981).

We thus hold that the Secretary erred in concluding that plaintiff's impairment was not severe and remand the case for continuation of the proceedings according to the Grid guidelines; the next step being whether plaintiff's impairment is listed in Appendix 1. If it is not found in the Appendix, then the Secretary must consider if the impairment prevents plaintiff from performing his past relevant work and, if it does, whether there is other substantial gainful employment in the national economy that plaintiff could perform. Should the Secretary deem it necessary on remand to receive the testimony of a vocational expert and/or a medical advisor, the hypothetical questions posed must conform to the guidelines set forth in *Arocho v. Secretary of Health and Human Services,* 670 F.2d 374 (1st Cir.1982).

SO ORDERED.